UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENG KONG,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C-06-7059 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR ADDITIONAL PROCEEDINGS**<br><br>**(Docket Nos. 12, 13)** |

    On July 25, 2003, Meng Kong filed an application for Supplemental Security Income ("SSI") benefits. Ms. Kong has exhausted her administrative remedies with respect to her claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Ms. Kong has moved for summary judgment or, in the alternative, a remand for additional proceedings. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Ms. Kong's motion for summary judgment and **DENIES** the Commissioner's motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

    On July 25, 2003, Ms. Kong filed an application for SSI benefits, alleging disability as of 1996, due to depression, insomnia, post-traumatic stress disorder, back ache, constant fatigue, headache, and constant daily nightmares. *See* AR 230 (application for SSI benefits). Ms. Kong's application was initially denied on February 20, 2004, *see* AR 196 (notice of disapproved claims), and again on reconsideration on April 28, 2004. *See* AR 206 (notice of reconsideration). Ms. Kong then sought an administrative hearing before an administrative law judge ("ALJ"). *See* AR 211

(request for hearing by ALJ).  A hearing was held before ALJ Richard P. Laverdure on March 15, 2005.  *See* AR 434 (ALJ hearing transcript).

On August 29, 2005, ALJ Laverdure held that Ms. Kong was not disabled under the Social Security Act.  The ALJ evaluated Ms. Kong's claim of disability using the five-step sequential evaluation process for disability required under federal regulations.  *See* 20 C.F.R. § 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations.  Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities.  Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix.  Benefits are awarded at step three if claimants are disabled.  Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments.  Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government.  Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

Before going through the five-step process, however, ALJ Laverdure took note that, previously, Ms. Kong had filed an application for SSI benefits and that that application was denied by ALJ Williams L. Akers on April 2, 1998.  *See* AR 39 (notice of decision by ALJ Akers). Accordingly, ALJ Laverdure was required "to determine whether 'changed circumstances' have arisen in the time between the claimant's current application for SSI and [the] 1998 decision by [ALJ Akers] denying the claimant's prior SSI claim."  AR 25 (notice of decision by ALJ Laverdure); *see also Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (holding that "[t]he principles of res judicata apply to administrative decisions" so that "[t]he claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability").  ALJ Laverdure concluded that there were changed circumstances "in the form of a change in the claimant's age category."  AR 25 (notice of decision by ALJ Laverdure).  More specifically, "[a]t the time of Judge Akers's decision, the claimant was 53 years old, a 'person

closely approaching advanced age' as defined by 20 CFR 416.963(d). Beginning June 3, 1999, the claimant turned 55 years old, and became a 'person of advanced age' under the regulations (20 CFR 416.963(e)), and on June 3, 2004 she became a 'person closely approaching retirement age' under this same section." AR 26.

Although the presumption of continuing nondisability was rebutted because of these changed circumstances, ALJ Laverdure was required to give effect to ALJ Akers's findings so long as there was "no new material evidence or change in the law relating to these findings." AR 27; *see also Chavez*, 844 F.2d at 694 ("The first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings."). At step one, ALJ Laverdure found that there was no new evidence to contradict ALJ Akers's finding that Ms. Kong had not engaged in substantial gainful activity since at least October 12, 1993. *See* AR 27.

At step two, ALJ Laverdure found "no reason to disagree with [ALJ Akers's] finding that the claimant has no severe physical impairments." AR 27 (emphasis omitted). As for whether Ms. Kong had a severe mental impairment, ALJ Laverdure noted that ALJ Akers did not make an explicit finding that Ms. Kong suffered from post-traumatic stress disorder and depression. *See* AR 28. However, because ALJ Akers analyzed Ms. Kong's case "through every step in the sequential disability determination process," Judge Laverdure concluded that ALJ Akers "must have found *some* impairment at Step 2 of the analysis." AR 28 (emphasis in original). Proceeding with the assumption that ALJ Akers did find severe mental impairments -- *i.e.*, post-traumatic stress disorder and depression -- ALJ Laverdure concluded that there was new material evidence that the impairments had improved. *See* AR 28. Accordingly, ALJ Laverdure made "a new finding at Step Two . . . that the claimant has no severe impairment [and] [t]he claimant is therefore not disabled at any time covered by her current claim for benefits." AR 30.

Ms. Kong's request for review of ALJ Laverdure's decision was summarily denied by the Appeals Council on September 15, 2006. *See* AR 6 (notice of Appeals Council decision). This petition ensued.

In her motion for summary judgment, Ms. Kong argues that ALJ Laverdure's decision was erroneous because (1) he rejected the opinion of Mona Afary, PhD, one of Ms. Kong's treating medical sources; (2) he rejected the opinions of two other treating medical sources, Dr. William Wallin and Dr. Lien Luong; (3) he assigned controlling weight to the opinions of two nonexamining medical consultants, Dr. Craig Smith and Dr. Robert Hood; (4) he rejected Ms. Kong's testimony as not credible; and (5) he rejected the testimony of Ms. Kong's daughter, Julie Kong.

## II.   DISCUSSION

A.   Legal Standard

A court may disturb the final decision of the Social Security Administration "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review "must consider the record as a whole," both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

As noted above, ALJ Laverdure disposed of Ms. Kong's application at step two of the five-step analysis. At step two, the issue is whether the claimant has one or more severe physical and/or mental impairments. Title 20 C.F.R. § 416.921(a) provides that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Although the regulation uses the phrase "significantly limit," the relevant Social Security rulings establish that the inquiry at step two is actually quite limited. For example, SSR 85-28 provides:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of

4

>slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (*i.e.*, the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).
>
>. . . .
>
>. . . . If such a finding is not clearly established by medical evidence, . . . adjudication must continue through the sequential evaluation process.

SSR 85-28; *see also* SSR 86-8 ("An impairment is not severe if it a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on the individual's physical or mental ability(ies) to perform basic work activities"); SSR 96-3p ("At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

Consistent with the above rulings, the Ninth Circuit has held that "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.2d 1273, 1290 (9th Cir. 1996) (emphasis added; quoting SSR 85-28); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (same). The Ninth Circuit has also underscored that step two is merely "'a de minimis screening device [used] to dispose of groundless claims,'" such that an "ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id.* at 687 (quoting *Smolen*, 80 F.3d at 1290, and SSR 85-28).

B.  Dr. Afary

Ms. Kong argues first that, at step two, ALJ Laverdure improperly rejected the opinion of one of her treating medical sources, Dr. Afary. Dr. Afary is a marriage family therapist. *See* Docket No. 14 (stipulation, filed on 6/25/07). She diagnosed Ms. Kong with having post-traumatic stress disorder and major depressive disorder. *See* AR 375 (psychological evaluation, dated 4/16/04, by

Dr. Afary); AR 380 (psychological evaluation, dated 10/14/03, by Dr. Afary). According to Dr. Afary, Ms. Kong was not able "to work due to her severe preoccupation with her life's traumata under the Khmer Rouge regime, her depression as well as her impairment of memory and concentration." AR 375; *see also* AR 381 ("[Ms. Kong] is not able to work."). ALJ Laverdure rejected Dr. Afary's opinion for the following reasons: (1) because her conclusions lacked support (*i.e.*, objective medical evidence) and (2) because her conclusions were contradicted by other evidence in the record.

As a preliminary matter, the Court notes that it is not clear from the record whether or not Dr. Afary is an acceptable medical source. Although the parties seem to agree that Dr. Afary has a PhD, there is no evidence that she is, *e.g.*, a licensed or certified psychologist. *See* 20 C.F.R. § 416.913(a) (defining acceptable medical sources as, *inter alia*, licensed physicians and licensed or certified psychologists). If Dr. Afary is not an acceptable medical source under the regulations, then the ALJ would have been entitled to give her opinion less weight. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) (noting that the regulations, *see* 20 C.F.R. § 416.913 "permit[] the Commissioner to accord opinions from other sources less weight than opinions from acceptable medical sources"). However, the ALJ never stated that this was a reason for giving her opinion less weight, *see Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a court is "constrained to review the reasons the ALJ asserts"); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (stating that a court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"), and, in fact, appeared to consider her opinion as a medical opinion pursuant to 20 C.F.R. § 416.927. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Since an agency must articulate the reasons for its decision and that agency action must be upheld, if at all, on the basis articulated by the agency itself, *see Pacific Coast Fed'n of Fishermen's Ass'ns v. United States Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005), the Court, on this review, assumes that Dr. Afary is an acceptable medical source.

Assuming such, the Court concludes that, in rejecting Dr. Afary's opinion, the ALJ failed to follow the framework specifically articulated by the Ninth Circuit in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), *available at* 2007 U.S. App. LEXIS 16910.  In *Orn*, the Ninth Circuit reiterated that the opinion of a treating physician is favored over that of a nontreating physician and, more important, made clear that, even if the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, it is entitled to some weight.  *See id.* at *11-12.

> If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight."  If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors [listed in 20 C.F.R. § 416.927(d)] in determining the weight it will be given.

*Id.* at *12.  The Ninth Circuit emphasized that "[a] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with substantial evidence in the case record means only that the opinion is not controlling weight, not that the opinion should be rejected."  *Id.* at *13 (internal quotation marks omitted).  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  *Id.* at *13-14 (internal quotation marks omitted).

In the instant case, Dr. Afary's opinion was inconsistent with substantial evidence in the case record.  "[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"  *Id.* at *15.  Here, Dr. Cecilia Hardey conducted an examination of Ms. Kong and made independent clinical findings that differed from those of Dr. Afary.  *See* AR 290 (psychological evaluation, dated 9/25/03, by Dr. Hardey) ("This applicant was obviously malingering.  She probably has average cognitive abilities.  She appears to [have] sufficient mental ability to perform most occupational tasks and to manage her financial resources in her own best interest.").

Ms. Kong challenges the opinion of Dr. Hardey because she was not given all of Ms. Kong's medical records to review and instead "was only given a ten year old consultative exam which

reported that Kong was 'volitionally not participating' in the exam' and only offered 'very vague complaints at best.'" Mot. at 18.  Although Dr. Hardey was not given all of Ms. Kong's medical records, most of the medical records appear to deal with physical impairments rather than mental impairments.  Furthermore, although Dr. Hardey was given one report that concluded Ms. Kong was malingering, there is nothing to show that that report dictated Dr. Hardey's opinion.  In fact, it is notable that there were several other doctors, in addition to Dr. Hardey, who concluded that Ms. Kong was malingering -- and Dr. Hardey was not aware of these opinions.  Importantly, Dr. Hardey actually examined Ms. Kong and based her opinion in large part upon the results of that examination.

While Dr. Hardey's opinion alone constitutes substantial evidence, Dr. Afary's opinion was also inconsistent with other evidence in the record, as noted by ALJ Laverdure.  *See* AR 29 (notice of decision by ALJ Laverdure).  For example, although Dr. Afary concluded that Ms. Kong had poor memory and decision-making skills, *see* AR 374-75, 379 (testimony by Ms. Kong), Ms. Kong's own testimony about her activities indicated otherwise.  Ms. Kong admitted that she had passed the driver's license test as well as the U.S. citizenship test.  *See* AR 455.  In addition, she previously babysat for her daughter's child on a regular basis, a service for which she was compensated.  *See* AR 457; *see also* AR 462-63 (testimony by Ms. Kong's daughter, Julie).

Although Dr. Afary's findings were therefore not controlling, the ALJ was not entitled to reject Dr. Afary's opinion outright.  Under *Orn*, "[i]f a treating physician's opinion is not given 'controlling weight . . . because it is inconsistent with other substantial evidence in the record, the Administration [must] consider[] specified factors [listed in 20 C.F.R. § 416.927(d)] in determining the weight it will be given."  *Orn*, 2007 U.S. App. LEXIS 16910, at *12.  Those factors include

> the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.* at *13; *see also* 20 C.F.R. § 416.927(d)(2).  In the instant case, the ALJ did not analyze all the factors enumerated in § 416.927(d)(2).  For example, the ALJ did not take into consideration that

there was evidence that supported Dr. Afary's opinion, such as the opinions of Dr. Wallin and Dr. Luong. Though the latter doctors did not opine, as Dr. Afary, did about the limitations of Ms. Kong as a result of a mental impairment,[1] they did diagnose her with having a mental impairment and prescribed her medication for such. *See* AR 327 (treatment notes, dated 5/5/03) (taking note of PTSD and prescribing medication for such); AR 430 (prescription, dated 5/20/04, for antidepression medication); *see also* AR 359 (treatment note, dated 4/18/01) (taking note of "depression/anxiety" and prescribing medication for such); AR 350 (treatment note, dated 9/4/02) (taking note of "depression" and prescribing medication for such). Evidence of diagnosis and treatment by Ms. Kong's treating physicians provides some corroboration of Dr. Afary's opinion. At the very least, it demonstrates a clinical basis for the foundation of Dr. Afary's opinion. While the value and weight of Dr. Wallin and Dr. Luong's diagnoses and treatment might be limited because neither physician discusses Ms. Kong's limitations, particularly in light of the medication she was taking, the ALJ did not discuss this evidence at all and appears not to have given it any consideration.

Nor did the ALJ, in finding Ms. Kong's reported activities inconsistent with Dr. Afary's opinion of total disability, address the testimony of Ms. Kong's daughter, Julie. At the hearing before the ALJ, Julie testified, *inter alia*, that Ms. Kong had done some babysitting for her from 1999 to 2002 but for only a few days a week for four or five hours at a time; that Ms. Kong was trained for a job at the casino where Julie worked but ultimately was not hired; that another sibling helps Ms. Kong to, *e.g.*, buy and carry things; that Ms. Kong still drives some but that her driving can be erratic (*e.g.*, driving to someone else's house instead of Julie's); and that Ms. Kong evidences symptoms such as crying, inability to sleep, nightmares, and headaches. *See* AR 461-66. According to Julie, Ms. Kong cannot work full time because she needs rest and because of her sickness and headaches. *See* AR 466.

---

[1] *See* SSR 96-5p, *available at* 1996 SSR LEXIS 2, at *11 ("Adjudicators are generally required to request that acceptable medical sources provide [medical source] statements [about what an individual can still do despite a severe impairment] with their medical reports.").

9

The Court also notes that the ALJ did not provide a complete analysis of the degree of Dr. Afary's understanding of the Administration's disability programs and evidentiary requirements, the degree of her familiarity with other information in the record, and her specialty as required by *Orn*.

Accordingly, taking into account the ALJ's assumption that Dr. Afary was an acceptable medical source, the Court concludes that, without the benefit of the recent *Orn* decision, the ALJ's rejection of Dr. Afary's opinion cannot be affirmed on this record. Under *Orn*, Dr. Afary's opinion was not entitled to controlling weight but ALJ Laverdure should still have analyzed all the applicable factors listed in § 416.927(d) to determine the appropriate weight to be accorded to Dr. Afary's opinion.

Although the Court concludes that remand is appropriate based on *Orn* alone, it additionally addresses Ms. Kong's contention that the ALJ has a duty to recontact Dr. Afary, the issue having been expressly raised by Plaintiff. A duty to recontact a treating medical source is triggered "when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1). Ninth Circuit case law is in accord. *See, e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Indeed, the Ninth Circuit has emphasized that there is a duty to fully and fairly develop the record even when a claimant is represented by counsel. *See id.*

In the instant case, ALJ Laverdure stated that he was rejecting Dr. Afary's opinion because, *inter alia*, her conclusions lacked objective medical evidence. As an example, the ALJ pointed to Dr. Afary's statements that Ms. Kong had a poor memory and had a difficult time making simple decisions but noted that Dr. Afary "provided no support for either finding." AR 29 (notice of decision by ALJ Laverdure). It thus appears that the ALJ was not able to ascertain the basis of Dr. Afary's opinion. The regulations and Ninth Circuit law suggest it would have been appropriate for the ALJ to recontact Dr. Afary to provide her an opportunity to explain fully the basis of her opinion. *See* 20 C.F.R. § 416.912(e)(2).

The Commissioner argues that under Ninth Circuit case law, an ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("[An] ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'"). The Court acknowledges these cases and the fact that tension exists between these cases and the regulations regarding the duty to recontact. Unfortunately, the line between situations in which it is proper for an ALJ to reject a conclusory opinion of a treating source and that in which the ALJ should recontact the treating source for additional information remains elusive.[2] The Court therefore does not base its decision to remand on the duty to recontact, but rather on the necessity to more fully evaluate the whole record in light of *Orn* and in view of the centrality of Dr. Afary's opinion to the ALJ's opinion. On remand, therefore, the Court directs the ALJ to recontact Dr. Afary as indicated herein.

C.    Dr. Wallin and Dr. Luong

Ms. Kong argues next that the ALJ erred, at step two, in rejecting the opinions of Dr. Wallin and Dr. Luong, two physicians who treated her. Dr. Wallin treated Ms. Kong on or about May 5, 2003. He diagnosed her with having PTSD and prescribed her medication for this mental impairment. *See* AR 327 (treatment notes, dated 5/5/03) (taking note of PTSD and prescribing medication for such). Dr. Wallin's treatment notes do not include any statements about what limitations Ms. Kong had as a result of her PTSD, nor do they address whether the medication successfully addressed the PTSD.

Dr. Luong treated Ms. Kong on or about May 20, 2004. On that day, he wrote a prescription for antidepression medication for Ms. Kong. *See* AR 430 (prescription, dated 5/20/04, for antidepression medication). Like Dr. Wallin, Dr. Luong does not appear to have made any

---

[2] The Court also acknowledges that the duty to recontact, which is part of the duty to fully and fairly develop the record, should not be taken to an extreme. *See Kendrick v. Shalala*, 998 F.2d 455, 456-58 (7th Cir. 1993) (noting that a record can never be complete and that how much evidence to be gathered is a subject on which district courts must respect the Commissioner's reasoned judgment). However, the duty to recontact is not without limits. It applies only to a treating source. *See Thomas*, 278 F.3d at 957. It does not apply when there is knowledge from past experience that the treating source cannot or will not provide the necessary information. *See* 20 C.F.R. § 416.912(e)(2).

statements about what limitations Ms. Kong or about whether the medication successfully addressed any mental impairment.

As noted above, in his decision, ALJ Laverdure did not discuss either the opinion of Dr. Wallin or Dr. Luong.  The Commissioner contends that the ALJ did address the opinions by referring to "sporadic complaints" in his decision, Opp'n at 5, but the sporadic complaints discussed in the ALJ's decision referred to Exhibit B-4F. *See* AR 28 (notice of decision by ALJ Laverdure). Dr. Wallin's opinion is part of Exhibit B-1F; Dr. Luong's opinion is part of Exhibit B-10F.  The question for the Court, therefore, is whether the ALJ's failure to discuss these doctor's opinions was erroneous.

"[I]n interpreting the evidence and developing the record, [an] ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003 ). An ALJ must only "explain why 'significant probative evidence has been rejected.'" *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  There is no doubt that the opinions of Dr. Wallin and Dr. Luong were probative to the issue of disability, so the only remaining issue is whether they were significant, in which case ALJ Laverdure should have explained why the opinions were rejected.  The Court finds that, although the opinions were not extensive, they were sufficiently significant in light of the relatively low standard of impairment required under step two. *See Smolen*, 80 F.2d at 1290; *Webb*, 433 F.3d at 687).  These opinions were provided by treating medical sources and Ms. Kong's mental impairment was apparently severe enough to warrant prescriptions for antidepression medication.[3]

The Commissioner suggests that the opinions were not significant because the "physicians did not give opinions of [Ms. Kong's] functional capacity or claim that she was disabled."  Opp'n at 5.  However, that the doctors did not comment on Ms. Kong's limitations does not necessarily establish a lack of significance in this case.  As noted above, although these treating physicians did not address Ms. Kong's functional limitations, the fact that she was diagnosed with and was treated

---

[3] The Court makes no conclusions as to whether or not Ms. Kong's mental impairment was stabilized by the medications.

12

for depression has some potential probative value to the step two analysis, particularly in light of Dr. Afary's opinion and the prior ALJ's finding of impairment.

The Commissioner also contends that the opinions of Dr. Wallin and Dr. Luong were not significant because they reflect only sporadic treatment, which suggests that Ms. Kong's condition was stable. The problem here is that, while Ms. Kong did not seek consistent treatment for her mental impairment, the Ninth Circuit has indicated that a person suffering from depression cannot be blamed for the failure to seek treatment. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate.").

Moreover, as noted above, even if sporadic, it is still significant that, on at least two different occasions, Ms. Kong was prescribed antidepression medication -- once by Dr. Wallin and again by Dr. Luong. In fact, the record reflects that Ms. Kong was prescribed antidepression medication two additional times. *See* AR 359 (treatment note, dated 4/18/01) (taking note of "depression/anxiety" and prescribing medication for such); AR 350 (treatment note, dated 9/4/02) (taking note of "depression" and prescribing medication for such). Under these circumstances, the ALJ should have addressed the doctors' opinions in his decision.

The sporadic nature of the treatment, the lack of any opinion as to functional limitations, and the summary nature of the doctors' reports might well inform the ALJ's analysis on remand. The problem with the opinion below is the lack of any discussion about these two treating physicians.[4]

Accordingly, the Court concludes that the opinions of Dr. Wallin and Dr. Luong constituted significant, probative evidence, and therefore the ALJ should have explained why that evidence was rejected.

---

[4] Ms. Kong has not raised a duty to recontact Drs. Wallin and Luong on appeal. Although the Court does not order the ALJ to recontact these physicians, he has the discretion to do so should he so choose. *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (noting that "how much evidence to gather is a subject on which we generally respect the Secretary's reasoned judgment").

D.      Nonexamining Medical Consultants

Ms. Kong contends next that the ALJ erred, at step two, by giving controlling weight to the opinions of two nonexamining medical consultants, Dr. Smith and Dr. Hood. The Court does not find this argument persuasive. While it agrees with Ms. Kong that the opinions of Dr. Smith and Dr. Hood are brief and conclusory, *see* AR 30 (referring to the consultation request, dated 11/3/03, by Dr. Smith, and consultation request, dated 4/6/04, by Dr. Hood); AR 363 (consultation request, dated 11/3/03, by Dr. Smith); AR 391, 395 (consultation request, dated 4/6/04, by Dr. Hood), ALJ Laverdure did not assign the opinions controlling weight in his decision. Rather, a fair reading of the decision demonstrates that the ALJ was mostly persuaded by the opinion of Dr. Hardey and referenced the opinions of Dr. Smith and Dr. Hood as corroborative of Dr. Hardey's opinion.

E.      Ms. Kong's Credibility

Ms. Kong further asserts that the ALJ erred, at step two, in finding her credibility to be "severely diminished." AR 30 (notice of decision by ALJ Laverdure). In his opinion, the ALJ offered two reasons for questioning Ms. Kong's credibility: (1) because Dr. Hardey, an examining physician, diagnosed Ms. Kong with malingering only and (2) because Ms. Kong claimed an inability to understand English but, during prior proceedings, responded to questions asked in English prior to the translation being performed. *See* AR 30 & n.2.

Under Ninth Circuit law, "[u]nless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Because there was affirmative evidence in the record that Ms. Kong was malingering -- including but not limited to Dr. Hardey's opinion -- ALJ Laverdure was not required to provide clear and convincing reasons for finding Ms. Kong's credibility diminished. The only requirement was that he

> make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. The ALJ may consider at least the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." If the ALJ's credibility

14

> finding is supported by substantial evidence in the record, [a court] may not engage in second-guessing.

*Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* SSR 96-7p (noting that a determination on credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record"; listing various factors, in addition to objective medical evidence, that may be considered when assessing a claimant's credibility regarding pain or other symptoms).[5]

   The Court concludes that, in the instant case, ALJ Laverdure articulated adequate reasons for finding Ms. Kong's credibility diminished and that there was substantial evidence in the record supporting the finding. While the Court does not agree that Ms. Kong's credibility was questionable simply because she claimed an inability to understand English but could in fact understand some English, ALJ Laverdure discredited her testimony in large part because there were *four* reports from examining physicians each coming to the conclusion that Ms. Kong was malingering or at the very least not being fully cooperative in the examination. *See* AR 136 (psychiatric consultation, dated 1/15/94, by Eastview Medical Group) ("I believe she is volitionally not participating appropriately in this exam. . . . I admonish her on several occasions that she needs to participate in this exam more fully, and usually after one of these admonishments she is somewhat more forthcoming."); AR 139 (independent medication examination, dated 8/1/94, by Dr. Blatt) ("I had no medical records at the time of the evaluation. However, after my report was written, the last four pages of Dr. Garlow's report arrived. He felt the claimant was a malingerer, and he arrived at his conclusion in the same fashion that I did. Notably in the claimant's disability report, she was much more communicative than she was during the interview."); AR 166 (psychological evaluation, dated 9/15/97, by Dr. Daly) ("Her performance suggests a poor level of cooperation and also suggests the presence of malingering. . . . [¶] The . . . test results appear to be of questionable validity because of the claimant's poor level of effort."); AR 289-90 (psychological evaluation, dated 9/25/03, by Dr. Hardey) ("The applicant's entire pattern of responding was typical of individuals who are attempting

---

[5] "[Ms. Kong] agrees the ALJ is not held to the clear and convincing standard in this case . . . ." Reply at 10.

to present themselves as more impaired than they actually are . . . . [H]er responses were typical of malingers [sic] . . . ."). The four reports constitute substantial evidence supporting the ALJ's credibility determination.

Ms. Kong argues still that ALJ Laverdure did not consider the entire case record, highlighting in particular the opinions of Dr. Afary, the doctors at the Asian Health Services Medical Clinic, and Dr. Nang Du of Asian Pacific Psychological Services. But the ALJ did consider the opinion of Dr. Afary and the opinions of the doctors at the Asian Health Services Medical Clinic (with the exception of Dr. Luong) were also discussed in his decision denying benefits. *See* AR 28 (notice of decision by ALJ Laverdure). As for the opinion of Dr. Du, it was cited in the ALJ's decision, albeit in passing. *See* AR 30. It should be noted, however, that Dr. Du's opinion was actually part of the record before the prior ALJ. *Cf. Lyle v. Secretary of Health & Hum. Servs.*, 700 F.2d 566, 568 (9th Cir. 1983) (stating that prior decision of disability "as of that date was entitled to *res judicata* effect" so that "[t]he question before the second Administrative Law Judge was whether conditions had changed *since* that time") (emphasis added); *see also Bladow v. Apfel*, 205 F.3d 356, 361 n.7 (8th Cir. 2000) ("[B]ecause the ALJ did not reopen the first hearing, principles of res judicata apply. As such the medical evidence from the initial proceeding cannot be subsequently reevaulated."); *Fish v. Apfel*, No. 99-5184, 2000 U.S. App. LEXIS 17302, at *13 (10th Cir. July 17, 2000) ("The ALJ was not required to reconsider the evidence underlying claimant's first application in the context of her second application.").

The ALJ's discrediting of Ms. Kong was supported by sufficient findings.

F.      Testimony of Ms. Kong's Daughter

Finally, in her motion, Ms. Kong argues that the ALJ failed to give reasons for rejecting the testimony of her daughter Julie and that this error was not harmless. Ms. Kong's daughter, Julie, testified at the hearing before the ALJ on March 15, 2005. As noted above, Julie testified, *inter alia*, that Ms. Kong had done some babysitting for her from 1999 to 2002 (a few days a week for four or five hours at a time); that Ms. Kong was trained for a job at the casino where Julie worked but ultimately was not hired; that another sibling helps Ms. Kong to, *e.g.*, buy and carry things; that Ms. Kong still drives some but that her driving can be erratic (*e.g.*, driving to someone else's house

instead of Julie's); and that Ms. Kong evidences symptoms such as crying, inability to sleep, nightmares, and headaches. *See* AR 461-66. According to Julie, Ms. Kong cannot work full time because she needs rest and because of her sickness and headaches. *See* AR 466.

ALJ Laverdure did not address Julie's testimony in his decision denying benefits. Although he did take note that Ms. Kong "cared for her granddaughter for a couple of years," AR 29 (notice of decision by ALJ Laverdure), he stated that this evidence eroded the credibility of Dr. Afary's opinions, rather than Julie's. By failing to address Julie's testimony, the ALJ erred. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen*, 100 F.3d at 1467 (emphasis omitted); *see also Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

The only question remaining is whether the ALJ's error was harmless. The Ninth Circuit has "recognize[d] [that] harmless error applies in the Social Security context." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1055; *see also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006) (noting that the Ninth Circuit has "never found harmless an 'ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work'"). The issue here is thus whether, fully crediting Julie's testimony, a reasonable ALJ could have reached a disability determination different from that reached by the ALJ in the instant case.

The Court concludes that a reasonable ALJ could have reached a different determination. Although Julie admitted that Ms. Kong had provided childcare for Julie's daughter a period of time, Julie explained that it was only for a few days a week for four or five hours at a time (*i.e.*, not fulltime). Furthermore, Julie's testimony about other difficulties her mother had encountered, from getting a job to driving, supported Ms. Kong's position that she has significant limitations. Julie's

testimony provided evidence which supported Dr. Afary's opinion and conflicted with the opinion of Dr. Hardey that Ms. Kong was simply malingering.

The Court passes no judgment as to whether the ALJ may properly discredit Julie's testimony. However, the problem here is that the ALJ did not expressly address Julie's testimony and state reasons for rejecting it.

G.      Remand

Having concluded that the ALJ did err in his decision denying benefits, the Court must decide whether or not there should be a remand for further administrative proceedings. In *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), the Ninth Circuit held that

> [r]emand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* at 593. The ALJ did make errors as described above, but there are outstanding issues that must be resolved before a determination of disability can be made. The ALJ should evaluate Dr. Afary's opinion in light of *Orn* and specifically address the findings of Drs. Wallin and Luong and the testimony of Julie. He should recontact Dr. Afary and determine what is the appropriate weight to give her opinion. The Court notes, however, that the ALJ is not precluded on remand from reexamining whether Dr. Afary is an acceptable medical source to which deference is due.

///
///
///
///
///
///

### III. CONCLUSION

For the foregoing reasons, the Court grants Ms. Kong's motion for summary judgment and denies the Commissioner's. The case is hereby remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment and close the file in this case.

This order disposes of Docket Nos. 12 and 13.

IT IS SO ORDERED.

Dated: November 7, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge